IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **RAY ELMER JONES, JR. and** | ) | **CHAPTER 7** |
| **DEBORAH ANN JONES** | ) | |
| | ) | |
| Debtors. | ) | **CASE NO. 11-71854** |

| | | |
|---|---|---|
| **RAY ELMER JONES, JR. and** | ) | |
| **DEBORAH ANN JONES** | ) | |
| | ) | |
| Debtors | ) | |
| | ) | **Debtors' Motion For Turnover or** |
| v. | ) | **Return of Garnished Funds** |
| | ) | |
| **EASTERN VAULT COMPANY, INC.** | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM DECISION

The matter before the Court is the Debtors' Motion For Turnover or Return of Garnished Funds filed on January 3, 2012 to recover monies obtained by Creditor Eastern Vault Company, Inc. ("Creditor") through a pre-petition garnishment summons from the General District Court of Tazewell County, Virginia.[1] Creditor filed a Response in Opposition on February 7, 2012, and at the initial hearing on February 8, 2012 the parties agreed to continue the matter to March 7, 2012. At the March 7 hearing the Debtors provided the Court with oral

---

[1] Although this matter might have been raised more properly by an adversary proceeding pursuant to Rule 7001(1) ("a proceeding to recover money or property") rather than by means of a motion under Rule 9014, the parties have made their arguments on the merits and the Court will rule upon the issues presented by the arguments which have been raised. *See In re Wilkinson*, 196 B.R. 311, 315 (Bankr. E.D.Va. 1996).

1

arguments and supporting case law, and Creditor filed its Supplemental Brief in Opposition on March 13, 2012.

The relevant facts of the underlying garnishment are not in dispute. Creditor received $1,533.90[2] through six checks issued by the male Debtor's employer in compliance with the December 14, 2010 garnishment summons issued by the Tazewell County General District Court.[3] The summons contained a return date of June 20, 2011, and the checks from the male Debtor's employer were written on March 30, April 13, April 27, May 11, May 25, and June 8 of 2011 for the respective amounts of $219.60, $237.43, $252.87, $269.84, $312.61, and $241.55. The Tazewell County General District Court received these six checks from the employer and mailed them to Creditor on the return date, June 20, 2011.

The Debtors subsequently filed their Chapter 7 bankruptcy petition on September 6, 2011 and recorded a homestead deed in the Circuit Court of Tazewell County on October 3, 2011 in an attempt to exempt the pre-petition garnisheed wages. *See* Exhibit to Debtors' Mot. For Turnover or Return of Garnished Funds (docket entry #15). Debtors have now alleged that the garnisheed funds received by Creditor were involuntary and preferential transfers occurring within the ninety-day period as set out in 11 U.S.C. § 547(b).[4] Creditor responded by arguing

---

[2] The Debtors' Motion alleges that Creditor received $1,470.75, however Creditor stated in its Response that it received $1,533.90. At the March 7, 2012 hearing, the Debtors assented to the higher amount, and this amount accords with the documentation attached to Creditor's Response.

[3] Creditor previously obtained a judgment in the same court on November 15, 2010 against the male Debtor for $9,090.75.

[4] Although § 547(b) speaks to avoidance actions conducted by a trustee, 11 U.S.C. § 522(h) permits a debtor to stand in the shoes of a trustee to avoid an involuntary transfer under § 547(b) that the trustee elects not to pursue, but only to the extent that the transferred property may be exempted under § 522(g)(1). Creditor has not raised any issue other than the period

2

that almost all of the received funds do not qualify as preferential payments, stating that the relevant date for determining whether garnisheed wages fall within the ninety-day preference period is the date that the wages were earned. *See Hughson v. Dressler Motors, Inc. (In re Hughson)*, 74 B.R. 438, 439 (Bankr. W.D.Va. 1987). Based on the dates of the six checks, the last of which was written on June 8, 2011, and the date of June 8, 2011 coincidentally as the starting point for the preference period, Creditor calculated that the only wages possibly earned within the ninety-day preference period are those earned on June 8, 2011. Creditor asserts that the wages earned on June 8, 2011 are the only funds which the Debtors could recover as preference payments.

    At the March 7, 2012 hearing, the Debtors refined their argument by asserting that under Virginia garnishment law they maintained, up until the date the funds were actually paid over to Creditor on June 20, an ownership interest in the $1,533.90 which would allow them to recover the funds transferred to Creditor. The Debtors rely upon language appearing in the case of *In re Madge Lebrun*, No. 95-10124-AM (Bankr. E.D.Va. May 23, 1995), and two decisions it cites for the proposition that under Virginia law " . . . the judgment creditor does not replace the judgment debtor as owner of the property, but merely has the right to hold the garnishee liable for the value of that property." *Id.* at slip op. 5 (citing *United States f/u/o Global Bldg. Supply, Inc. v. Harkins Builders, Inc.*, 45 F.3d 830, 833 (4th Cir. 1995), and *Lynch v. Johnson*, 84 S.E.2d 419, 421-22 (Va. 1954)). The Debtors also cite *United States v. Whiting Pools*, 462 U.S. 198 (1983), which held in relevant part that property seized by the Internal

---

when the wages were earned as limiting any claim that the transfer of such wages to it was preferential under § 547(b) and the Court will limit its analysis to that contention and the counter-argument asserted by the Debtors.

Revenue Service to satisfy its tax lien but not yet sold was property of the estate. From the Debtors' perspective, the central factor is not when their ownership interest in the garnisheed funds began, but rather when it ended. The Debtors conclude that because the garnisheed funds belonged to them until they were actually paid over to Creditor on June 20, 2011, they consequently have a right to pursue recovery of that property.[5]

Creditor responded in its Supplemental Brief by asserting that *Hughson* remains directly on point and controls the outcome of this Motion. According to Creditor, the date on which the wages were earned is the determinative issue, not the return date or the date the funds were actually paid. Creditor further asserts that the decisions upon which the Debtors rely only provide general descriptions and dicta regarding garnishment law in Virginia, none of which informs the analysis of whether the transfers at issue took place within the ninety-day preference period.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. A motion to determine, avoid, or recover preferences is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(F), and an order to turn over property of the estate, and

---

[5] The Debtors' Motion alleges that the transfer of the wages was preferential, which would indicate an argument under § 547(b). However, at the March 7 hearing, counsel for the Debtors appeared to suggest that the Debtors retained an ownership interest in the wages up through the petition date, indicating an argument for recovery under 11 U.S.C. § 541(a) as property of the estate. The Court concludes to the contrary that a judgment debtor could not have any further ownership interest under applicable non-bankruptcy law in money once it has been paid over to and accepted by the judgment creditor pursuant to the latter's lawful legal process.

as a matter of course any underlying motion seeking such a determination by the Court, is a

"core" matter under § 157(b)(2)(E). The Court need not determine whether its ruling upon the

claim asserted in the Debtors' Motion might be called into question under the Supreme Court's

recent decision in *Stern v. Marshall*, 131 S. Ct. 2594, 2604-05 (2011), because counsel for both

parties have expressly consented to this Court's entry of a final judgment in this matter (docket

entries # 30, 31).

In order to avoid a transfer of an interest in property as a preferential payment

under § 547(b), the Debtors must provide proof that such transfer was:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>    (A) on or within 90 days before the date of the filing of the petition; or
>    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;[6] and
> (5) that enables such creditor to receive more than such creditor would receive if—
>    (A) the case were a case under chapter 7 of this title;
>    (B) the transfer had not been made; and
>    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Boiled down to their essence, the arguments of the parties come down to

one critical question: whether the "transfer" which is controlling with respect to their dispute is

the date the checks for the garnisheed wages were sent by the Virginia court to Creditor, as the

Debtors assert, or is a series of dates on which the wages in question were actually earned and

became subject to the existing lien of the prior garnishment summons. The answer to that

question controls the resolution of this matter.

---

[6] There is no suggestion that Creditor is an "insider" as to the Debtors.

Creditor contends that *Hughson* is controlling in this case. The Debtors deny that contention. At the March 7 hearing the Court asked counsel for the Debtors whether he was asserting that *Hughson* was incorrectly decided or that it was rightly decided but was distinguishable from the facts of this case. He replied that he did not dispute the correctness of the holding in *Hughson* but believed that it was distinguishable. Accordingly, the Court will review the facts and holding of that decision. In *Hughson* an execution upon the creditor's state court judgment was delivered to the sheriff on October 13, 1986 with a return date of January 12, 1987. The employer sent a portion of the debtor's wages to the state court, and on December 29, 1986 the court forwarded those funds to the employer. The debtor then filed a bankruptcy petition on March 12, 1987 and moved to avoid the transfer of the wages as an involuntary and preferential transfer. Most notably, the ninety-day period reached back to December 12, 1986, suggesting that part of the garnisheed funds were earned before the preference period and part during such period. *See Hughson*, 74 B.R. at 438-39. The debtor in that case argued that none of the wages were transferred until the return date, prompting the court to evaluate when a garnishment lien would divest a debtor of property rights in wages and thus transfer those rights to the judgment creditor. Noting a split of authority, the Court held that for purposes of § 547(b) in Virginia, a debtor does not acquire rights in wages until those wages are earned and that the transfer to a judgment creditor under a garnishment lien would not occur until that same date. *See id.* at 440.

The relevant facts of *Hughson* closely match the critical facts in the present case. In both cases the debtors' wages were subject to garnishment under Virginia law. The debtors' employers complied and sent portions of the wages to the appropriate state courts, which then

6

forwarded the funds to the judgment creditors. Both debtors shortly thereafter filed bankruptcy petitions such that the transfers of the funds from the state courts to the creditors occurred within ninety days of the petition dates. Additionally, in both cases it appears that part of the garnisheed wages were earned during that ninety-day period as well.

At the March 7 hearing the Debtors put forward an argument similar to that made by the debtor in *Hughson*, contending that they retained an ownership interest in the garnisheed wages during the preference period which would permit them to recover those funds. The Debtors pointed to language from two cases regarding garnishment law in Virginia for support, *Global Bldg. Supply*, 45 F.3d at 833, and *Lynch*, 84 S.E.2d at 421-22, but upon review of those cases the Court believes the implications of that language are not relevant to the case at hand. Those courts were considering a judgment creditor's right of collection against a garnishee, whereas in the case at hand the garnishee appears to have complied with the writ of *fieri facias* without objection. Had the male Debtor's employer challenged Creditor's right of collection, the cases cited by the Debtors would provide guidance on whether Creditor had yet acquired ownership of the funds in question. However, because the male Debtor's employer effectively acknowledged that it possessed property which was subject to the writ of *fieri facias* and sent those funds to the state court, the Court concludes in line with *Hughson* that the lien of the garnishment summons came into existence more than ninety days prior to the filing date of this bankruptcy case and attached to the male Debtor's wages at the time such wages were earned. The Debtors' reliance on *Madge Lebrun*, No. 95-10124-AM, is also misplaced. Although also a Bankruptcy Court case confronting wage garnishment in Virginia as a possible preference payment, the funds in that case were never turned over to the creditor as the petition was filed on

January 13, 1995, well before the garnishment return date of March 22, 1995, and thus the debtor's ownership of the funds was never in question. Finally, the Debtors' reference to *Whiting Pools*, 462 U.S. 198, also does not provide the Court with guidance in this situation. That case dealt with the seizure of tangible, personal property by the Internal Revenue Service pursuant to a federal tax lien it held against the debtor, and the Court's analysis focused on 11 U.S.C. § 542(a) and the ownership interest that such a tax lien provides. This Motion, on the other hand, deals with garnishment of the male Debtor's wages pursuant to Virginia law and the impact of § 547(b) on the transfer of those wages. Ultimately, with regard to all of the cases cited by the Debtors, *Hughson* is directly on point with the issue presented here and remains good law. Indeed, the same conclusion has been reached in the Eastern District of Virginia, both before and after *Hughson*. For a more recent decision to the same effect and containing a painstaking and entirely persuasive analysis by Bankruptcy Judge Stephen S. Mitchell, now retired, of prior Fourth Circuit and District Court precedent on point, see *In re Wilkinson*, 196 B.R. at 319-22.

Therefore the Court concludes that the holding of *Hughson* controls the determination of the Debtors' Motion. Although counsel for the Debtors has urged that the facts of this case are distinguishable from the facts of *Hughson*, he has failed to point out any material respect in which a result-altering difference exists. The Court for its part does not perceive that the relevant facts of the present case are distinguishable in principle from the facts of that case. Accordingly, only the "wages earned by the debtor within the preference period which are subject to the lien of a fieri facias are avoidable by the trustee under 11 U.S.C. § 547(b)." *Hughson*, 74 B.R. at 440. With respect to the precise facts of this case, any garnisheed wages

earned by the male Debtor prior to June 8, 2011 are not preferential payments, but any earned on or after that date will be so regarded. The only evidence before the Court regarding the dates upon which the male Debtor earned the wages at issue are copies of the six checks attached to Creditor's Response. That evidence shows that five of the six checks sent to the Tazewell County General District Court by the male Debtor's employer were written before June 8, 2011, with the dates being March 30, April 13, April 27, May 11, and May 25 of 2011. As a result, the funds contained in the first five checks represent wages earned before the ninety-day preference period. As for the final check issued on June 8, 2011, there is only a single day in which the preference period and the dates on which the male Debtor possibly earned wages overlap. The parties have not provided any direct evidence, however, indicating precisely how much, if any, of the June 8, 2011 check represented wages earned on June 8.

The Court will therefore make its ruling in principle, and request that the parties review the facts in light of the Court's holding in order to determine whether the male Debtor earned wages on June 8, 2011 and, if so, how much was withheld for that date. The parties shall confer, and shall either submit a Stipulation within seven days of the date of the Order which accompanies this Memorandum Decision responding to the above request or ask that the Court hold an evidentiary hearing to resolve the issue. An Order in accordance with the above decision will be entered contemporaneously herewith.

This 6th day of April, 2012.

_____
UNITED STATES BANKRUPTCY JUDGE